UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WEALTH2k, INC., | ) | CASE NO. 1:19CV1445 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| KEY INVESTMENT SERVICES, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #40) of Third-Party Defendant Marc Vosen to Stay Pending Arbitration or to Dismiss. For the following reasons, the Motion is GRANTED IN PART. Proceedings on the Third-Party Complaint of Key Investment Services, LLC ("KIS") against Third-Party Defendant Marc Vosen are STAYED pending arbitration pursuant to the Rules of the Financial Industry Regulatory Authority ("FINRA").

**I. FACTUAL BACKGROUND**

Plaintiff Wealth2k, Inc. filed the captioned lawsuit on June 21, 2019, alleging breach of a long-term oral licensing agreement for a web-based software solution for retirement

income planning called The Income for Life Model® ("IFLM Solution").  KIS guaranteed a substantial number of software users (retirement professionals) and Wealth2k agreed to a deeply-discounted licensing fee per monthly user.

In addition, KIS and non-party Pershing LLC had a confidential agreement by which KIS retirement professionals could access specialized software, such as the IFLM Solution, on their desktop and laptop computers through Pershing's digital infrastructure platform called the NetX360 Dashboard.  Pershing provided a monthly IFLM user count to KIS.  KIS added $35 per user to its monthly payment to Pershing for the NetX360 Dashboard.  Pershing passed on that payment to Wealth2k, less a transaction fee.

On March 1, 2019, KIS instructed Pershing to "cease any future payments to Wealth2k and remove access to the system for all licensed bankers and financial advisors [i.e., KIS Retirement Professionals] on [March 31, 2019]."  (Complaint, ECF DKT #1, ¶ 46 and Exhibit 1).  The instant lawsuit followed.  Wealth2k alleges that it fully performed all of its obligations, and remains ready, willing and able to provide discounted pricing for the IFLM Solution in exchange for at least 1,000 monthly users for the duration of the KIS-Pershing Agreement.  Wealth2k informed KIS that Marc Vosen, as KIS's chief executive officer, had verbally promised Wealth2k that KIS would continue to utilize Wealth2k's product for the duration of KIS's relationship with Pershing.  Wealth2k asserts claims for Breach of Contract, Promissory Estoppel and Unjust Enrichment/Quantum Meruit against KIS.

When KIS received the initial document production from Wealth2k on January 2, 2020, it allegedly learned for the first time about a written consulting agreement between

David Macchia, founder and chief executive officer of Wealth2k, and Vosen, former chief executive officer of KIS. This consulting agreement was entered into prior to Vosen's retirement and Vosen would directly benefit financially by its terms.

On July 16, 2020, KIS filed its Amended Answer, Counterclaim and Third-Party Complaint (ECF DKT #34) with leave of court. In the Third-Party Complaint against Vosen, KIS claims Breach of Fiduciary Duty, Fraud, Civil Conspiracy and Implied Indemnity.

KIS alleges that Vosen breached his fiduciary duties to KIS by entering into the undisclosed Consulting Agreement, concealing from KIS the existence of the Consulting Agreement and engaging in self-dealing by virtue of his position as an officer of KIS.

KIS also claims that the existence of the undisclosed Consulting Agreement was material to KIS's business relationship with Wealth2k, as well as to KIS's fiduciary business relationship with Vosen. Vosen concealed the existence of the Consulting Agreement with the intent to mislead KIS into the continued use of the IFLM Solution, from which Vosen stood to directly benefit financially. This fraudulent concealment damaged KIS.

KIS further alleges that the conduct of Macchia and Vosen, such as entering into the undisclosed Consulting Agreement and engaging in unilateral business negotiations without KIS's knowledge and against KIS's interests, constitutes a malicious combination of two or more persons. Vosen's fraudulent concealment and breach of fiduciary duties are unlawful acts independent of the conspiracy. Vosen acted knowingly and without reasonable or lawful excuse, all to the detriment of KIS.

Finally, KIS alleges it is entitled to indemnification from Vosen for any amount KIS may be found liable to pay as damages to Wealth2k in this lawsuit.

On September 14, 2020, Vosen filed the within Motion (ECF DKT #40) to Stay Pending Arbitration or to Dismiss. KIS is a FINRA member, and a registered brokerage and investment advisor firm. Vosen is a registered broker and was KIS's FINRA-registered principal at all relevant times. FINRA Rules mandate arbitration of all disputes between "Members" and "Associated Persons." Thus, Vosen insists that the Third-Party Complaint should be stayed pending the conclusion of the FINRA arbitration process.

KIS objects because the claims in the Third-Party Complaint against Vosen do not constitute an "industry dispute" subject to mandatory arbitration under FINRA Rules.

## II. LAW AND ANALYSIS

**The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq*.**

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004); see *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 891 (Tex. 2010) (quoting

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4 (2003). The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).

The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

As a threshold matter, the Court determines whether or not an issue is within the scope of the parties' arbitration agreement. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000). "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir.1998). The Sixth Circuit instructs as follows:

> When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of

arbitration and resolve doubts in favor of arbitration.  Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.  *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006) (internal citations omitted).

**Financial Industry Regulatory Authority ("FINRA")**

FINRA Rule 13100

(q) Member

For purposes of the Code, the term "member" means any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated, suspended, cancelled, revoked, the member has been expelled or barred from FINRA or the member is otherwise defunct; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and to be treated as members of FINRA for purposes of the Code, whether or not its membership has been terminated, suspended, cancelled, revoked, the member has been expelled or barred from its self-regulatory organization, or the member is otherwise defunct.


(u) Person Associated with a Member

The term "person associated with a member" means:
(1) A natural person who is registered or has applied for registration under the Rules of FINRA; or
(2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

For purposes of the Code, a person formerly associated with a member is a person associated with a member.


FINRA Rule 13200(a) - Required arbitration

Except as otherwise provided in the Code, a dispute must be arbitrated under

> the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> • Members;
> • Members and Associated Persons; or
> • Associated Persons.

FINRA Rule 2263

> A member shall provide an associated person with the following written statement whenever the associated person is asked … to manually sign an initial or amended Form U4 ….:   The **Form U4** contains a predispute arbitration clause.  It is in item 5 of Section 15A of the Form U4.  You should read that clause now.  Before signing the Form U4, you should understand the following: **You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm …. that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**  (Emphasis added).

KIS does not dispute that it is a "member" or that Vosen is an "associated person" under FINRA Rules.  When Vosen was hired by KIS, he unquestionably signed a Form U-4:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm … that is required to be arbitrated under the rules, constitutions, or by-laws of the [Self Regulatory Organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.  (ECF DKT #40 at 3).

KIS contends that the claims set forth in the Third-Party Complaint do not arise out of the business activities of a "member" or of an "associated person" as intended by FINRA Arbitration Rules.  In its Memorandum in Opposition, KIS insists that its claims against Vosen "arise out of his decision to moonlight as a software salesman for one of KIS's vendors and his failure to disclose to KIS his irreconcilable conflict of interest in doing so.  Mr. Vosen's improper conduct in this regard has no meaningful nexus to his status as an

-7-

associated person nor to KIS's status as a FINRA member and, therefore, does not constitute industry "business activity" necessary to subject this dispute to mandatory FINRA arbitration." (ECF DKT #44 at 7).

In response, Vosen summarizes the claims against him this way: "A FINRA-regulated entity is accusing its former CEO of lacking authorization, while serving as CEO, to enter into a contract for a software that provides investment services to clients; and of allegedly failing to disclose, while serving as CEO, the fact that he had entered into a consulting agreement with that same company." (ECF DKT #45 at 7-8).

The Court's job is to determine whether or not an issue is within the scope of the parties' arbitration agreement. *Stout*, 228 F.3d at 714. The parties here broadly agreed to arbitrate any dispute, claim or controversy that might arise between Vosen and KIS concerning their business activities.

KIS emphasizes, in its Third-Party Complaint, that Vosen breached his fiduciary duties owed as chief executive officer and engaged in self-dealing in contravention of his obligations as chief executive officer. It is unlikely that these claims would exist in the absence of the relationship between Vosen, as CEO and registered broker, and KIS, as employer and registered FINRA broker-dealer.

The Court is unable to find an express provision excluding the subject matter of the KIS-Vosen dispute nor discern any evidence of a purpose to exclude these claims from FINRA arbitration. KIS has not met its burden of demonstrating that arbitration of the Third-Party Complaint against Vosen is inappropriate or unenforceable. Moreover, any doubts regarding arbitrability must be resolved in favor of arbitration over litigation. *Masco,*382

F.3d at 627; *see Fazio,* 340 F.3d at 392.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #40) of Third-Party Defendant Marc Vosen to Stay Pending Arbitration or to Dismiss is GRANTED IN PART. Proceedings on the Third-Party Complaint of Key Investment Services, LLC ("KIS") against Third-Party Defendant Marc Vosen are STAYED pending arbitration pursuant to the Rules of the Financial Industry Regulatory Authority ("FINRA").

**IT IS SO ORDERED.**

**DATE: April 23, 2021**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO
Senior United States District Judge**